UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BIDI VAPOR, LLC, <br><br> *Plaintiff* <br><br> v. <br><br> ALEX'S WHOLESALE OF SC LLC, ANDREW CONVENIENCE STORE & RESTAURANTS LLC, IBRAHIM LLC, AHMED F. SHEDID and IBRAHIM F. SHEDID <br><br> *Defendants* | CIVIL ACTION No. **2:21-cv-00487-DCN** <br><br><br> **COMPLAINT** <br><br> **Jury Trial Requested** |

Plaintiff, Bidi Vapor, LLC, a limited liability company organized and existing under the laws of the State of Florida, by and through its undersigned counsel, alleges as follows:

## INTRODUCTION

This case involves Defendants' intentional and willful manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sales of potentially dangerous, counterfeit versions of Plaintiff's premium, eco-friendly, innovative electronic cigarette and vaping product, namely, its Bidi Stick, a pre-filled, revolutionary e-liquid tank equipped with a fully charged battery and Class A Nicotine for adult smokers.  Counterfeit vape materials, like Defendants', have come under scrutiny in the United States recently as federal authorities are investigating vaping-related lung illnesses in hundreds of people across the country. (*See* Rob Kuznia and Lena H. Sun, *Potential Culprits in Mysterious Lung Ilnesses: Black-Market Vaping Products*, The Washington Post, https://www.washingtonpost.com/health/potential-culprits-in-mystery-lung-illnesses-black-market-vaping-products/2019/09/24/cb5b708e-d98d-11e9-ac63-3016711543fe_story.html (Sept. 25, 2019)).

As of September of 2019, the Centers for Disease Control identified 530 confirmed or probable cases of vaping associated illnesses. (*See* Daniela Hernandez, *Sales of Illicit Vaping Products Find Home Online*, The Wall Street Journal, https://www.wsj.com/articles/sale-of-illicit-vaping-products-find-home-online-11568971802 (Sept. 20, 2019)). Industry experts have found that counterfeit vape products contain ingredients including pesticides and vitamin E acetate, which is a potential culprit behind the vaping related illnesses. *Id*. Moreover, counterfeit vaping operations purchase counterfeit packaging from Chinese factories and empty vape cartridges, which are ultimately filled with THC liquid. It is often this THC liquid that is cut with other substances that can be dangerous and cause serious illnesses. (*See* Julie Bosman and Matt Richtel, *Vaping Bad: Were 2 Wisconsin Brothers the Walter Whites of THC Oils?*, The New York Times, https://www.nytimes.com/2019/09/15/health/vaping-thc-wisconsin.html (Sept. 15, 2019)). The packaging of these counterfeit products are sometimes direct counterfeits of mass-market brands, and appear to be legitimate. Dr. Howard Zucker, commissioner of the New York State Department of Health has stated that "[t]he counterfeit handbag you buy on the corner is not going to kill you but the counterfeit vaping device you buy has a chance to kill you." *Id*. Mr. Zucker has also stated that consumers would not recognize that the counterfeit vapes are not authentic products. *Id*.

## NATURE OF THE ACTION

1.      This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and a related state law claim for unfair trade practices under the South Carolina Unfair Trade Practice Act, S.C. Code Ann. §§ 39-5-10 *et seq*., arising from the infringement of the BIDI Marks, including, without limitation, by

manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's BIDI Products by Defendants.

### JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.     Personal jurisdiction exists over Defendants in South Carolina pursuant to S.C. Code Ann. § 36-2-802 and S.C. Code Ann. § 36-2-803, because, upon information and belief, Defendants reside or are located in and regularly conduct, transact and/or solicit business in South Carolina, and/or derive substantial revenue from their business transactions in South Carolina and/or otherwise avail themselves of the privileges and protections of the laws of the State of South Carolina such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in South Carolina such that Defendants should reasonably expect such actions to have consequences in South Carolina.

4.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 and Local Rule 3.01 because, upon information and belief, one or more Defendants reside in this judicial district and division, a substantial part of the events or omissions giving rise to the claims in this Action occurred in this

judicial district and division, Defendants conduct, transact and/or solicit business in South Carolina, and Defendants have caused injury to Plaintiff in this judicial district and division.

## THE PARTIES

5.      Plaintiff BIDI Vapor, LLC is a limited liability company organized and existing under the laws of the State of Florida, with its headquarters located at 4460 Old Dixie Hwy, Grant-Valkaria, FL 32949 ("Plaintiff" or "BIDI"). Its members are residents of states other than South Carolina.

6.      Upon information and belief, Defendant Alex's Wholesale of SC LLC is a South Carolina Limited Liability Company having a principal place of business at 2210 Tech Pkwy, North Charleston, SC, 29416 ("Alex's Wholesale").  Its member or members, upon information and belief, are residents of South Carolina.

7.      Upon information and belief, Defendant Andrew Convenience Store & Restaurants LLC is a South Carolina Limited Liability Company having a principal place of business at 3713 Dorchester Rd, North Charleston, SC, 29405 ("Andrew Convenience Store").  Its member or members, upon information and belief, are residents of South Carolina.

8.      Upon information and belief, Defendant Ibrahim LLC is a South Carolina Limited Liability Company having a principal place of business at 3713 Dorchester Rd, North Charleston, SC, 29405 ("Ibrahim LLC").  Its member or members, upon information and belief, are residents of South Carolina.

9.      Defendant Alex's Wholesale, Defendant Andrew Convenience Store and Defendant Ibrahim LLC are collectively hereinafter referred to as "Corporate Defendants".

10.     Upon information and belief, Defendant Ahmed F. Shedid is an individual conducting business at 2210 Tech Pkwy North Charleston, SC, 29416, and believed to be residing at 3260 Bonanza Rd, Charleston, SC, 29414 ("AFS").

11.     Upon information and belief, Defendant Ibraham F. Shedid is an individual conducting

business at 3713 Dorchester Rd, North Charleston, SC, 29405, and believed to be residing at 101 Shaftesbury Ln, Summerville, SC 29485 ("IFS").

12.     Defendant AFS and Defendant IFS are collectively hereinafter referred to as, "Individual Defendants".  Corporate Defendants and Individual Defendants are collectively hereinafter referred to as "Defendants".

13.     Upon information and belief, since their creation, now and at all times relevant to this Action, Corporate Defendants were under the de facto and sole control and served as the alter ego of Individual Defendants, who are the owners, presidents, directors and/or other officers or board members, of the Corporate Defendants.  Upon information and belief, Individual Defendants are also a moving and conscious force behind the counterfeiting and infringement that is the subject of this Action.

14.     Upon information and belief, adherence to the fiction of the existence of Individual Defendants as separate and distinct from Corporate Defendants would permit an abuse of corporate privilege and would permit an injustice in that Individual Defendants would succeed in avoiding legally incurred liabilities while maintaining the benefits of the corporate status.

15.     Upon information and belief since the time of its creation, now, and all times relevant to this Action such a unity of interest and ownership existed between Individual Defendants and Corporate Defendants, such that separate personalities did not and do not in reality exist.

### GENERAL ALLEGATIONS
#### Plaintiff and Its Well-Known BIDI Products

16.     BIDI is a leading developer and marketer of premium, eco-friendly, innovative electronic cigarette and vaping products.

17.     BIDI's most successful and innovative product is Bidi Stick, a pre-filled, revolutionary e-liquid tank equipped with a fully charged battery and Class A Nicotine for adult smokers.  With a high-quality aluminum frame and eleven flavors to choose from, the Bidi Stick delivers consistent flavor

and a satisfying vaping experience ("BIDI Products").

18.    The BIDI Products are one of the world's leading electronic cigarettes and have emerged as a leading player in the dispobable electronic cigarettes industry, having captured a 27.9% U.S. market share in the fourth quarter calendar of 2020.

19.    BIDI distributes and sells the BIDI Products through the BIDI Website, https://bidivapor.com, and through Kaival Brands Innovations Group, Inc. (hereinafter, "Kaival"), which is the exclusive distributor of all BIDI Products.

20.    While BIDI has gained significant common law trademark and other rights in its BIDI Products, through use, advertising and promotion, BIDI has also protected its valuable rights by filing for and obtaining federal trademark registrations.

21.    For example, BIDI is the owner of the following U.S. Trademark Registrations Nos.: 6,205,778 for " bidi " for goods in Class 34; and 6,208,498 for "BIDI" for goods in Class 34. True and correct copies of the registrations for the BIDI Marks are attached hereto as **Exhibit A** and incorporated herein by reference.

22.    The BIDI Marks are currently in use in commerce in connection with the BIDI Products. The BIDI Marks were first used in commerce on or before the dates of first use as reflected in the respective registrations attached hereto as **Exhibit A**.

23.    The success of the BIDI Products is due in part to BIDI's marketing and promotional efforts.  These efforts include advertising and promotion through BIDI's websites, retailer websites, distributor's websites and other social media and internet-based advertising, print, among other efforts domestically and abroad, including South Carolina.

24.    BIDI's success is also due to its use of the highest quality materials and processes in making the BIDI Products to meet or exceed U.S. requirements and standards.

25.     Additionally, BIDI owes a substantial amount of the success of the BIDI Products to its consumers and word-of-mouth buzz that its consumers have generated.

26.     BIDI's efforts, the quality of its BIDI Products, its marketing, promotion and distribution efforts, and the word-of-mouth buzz generated by its consumers have made the BIDI Marks and BIDI Products prominently placed in the minds of the public. Retailers, retail buyers, consumers and members of the public have become familiar with the BIDI Marks and BIDI Products, and have come to associate them exclusively with BIDI. BIDI has acquired a valuable reputation and goodwill among the public as a result of such associations.

27.     BIDI has gone to great lengths to protect its interests to the BIDI Products and the BIDI Marks.  No one other than BIDI is authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the BIDI Marks, or use the BIDI Marks without the express permission of BIDI.

## Defendants' Wrongful and Infringing Conduct

28.     Particularly in light of Plaintiff's success with its BIDI Products, as well as the reputation they have gained, Plaintiff and its BIDI Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its BIDI Products and BIDI Marks and Plaintiff investigates and enforces against such activities, though, among other ways, its counsel, Epstein Drangel LLP ("Epstein Drangel").

29.     Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale, and/or selling products bearing the BIDI Marks and/or products in packaging and/or containing labels bearing the BIDI Marks that are identical and/or confusingly similar to the BIDI Marks and/or products that are identical and/or confusingly similar to the BIDI Products (collectively hereinafter referred to as, "Counterfeit Products") to U.S. consumers (including those located in the state of South Carolina).

30.     On or about December 3, 2020, Plaintiff received information that Defendants were manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale, and/or selling Counterfeit Products through Defendants' wholesale store located at 2210 Tech Pkwy North Charleston, SC, 29416 ("Defendants' Wholesale Location") and Defendants' retail store located at 3713 Dorchester Rd, North Charleston, SC, 29405 ("Defendants' Retail Location"), and began an investigation.

31.     On or about December 16, 2020, Vaudra International, licensed South Carolina investigators hired by counsel for Plaintiff ("Plaintiff's Investigators"), placed an order from Defendants by telephone and Plaintiff's Investigators received the order on or about December 29, 2020 ("12/16/2020 Purchase").

32.     Plaintiff confirmed that the products purchased by Plaintiff's Investigators from Defendants' Wholesale Location during the 12/16/2020 Purchase are Counterfeit Products.  A side-by-side comparison of the BIDI Products and the Counterfeit Products purchased by Plaintiff's Investigators from Defendants' Wholesale Location during the 12/16/2020 Purchase appears directly below:

**BIDI Product**                    **Defendant's Counterfeit Product**

 

33.     On or about January 6, 2021, a representative from Kaival visited Defendant's Retail Location in person and made a purchase ("1/6/2021 Purchase").

34.     Plaintiff has confirmed that the products purchased by Kaival from Defendants' Retail Location during the 1/6/2021 Purchase are Counterfeit Products. A side-by-side comparison of the Counterfeit Products purchased by a Kaival Representative from Defendants' Retail Location during the 1/6/2021 Purchase appears directly below:

**BIDI Product**                    **Defendant's Counterfeit Product**




35.    On January 28, 2021, Plaintiff's Investigators visited Defendant's Wholesale Location in person and made a purchase ("1/28/2021 Purchase").

36.    Plaintiff confirmed that a majority of the products purchased by Plaintiff's Investigators from Defendants' Wholesale Location during the 1/28/2021 Purchase are Counterfeit Products.  A side-by-side comparison of the BIDI Products and the Counterfeit Products purchased by Plaintiff's Investigators from Defendants' Wholesale Location during the 1/28/2021 Purchase appears directly below:

**BIDI Product**                    **Defendant's Counterfeit Product**




37.     Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors manufacture, import, export, advertise, market, promote, distribute, offer for sale or sell the BIDI Products or to use the BIDI Marks, or any marks that are confusingly similar to the BIDI Marks.

38.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's BIDI Products, only with minor variations that no ordinary consumer would recognize.

39.     As is evident from the foregoing side-by-side comparisons each of Defendants' Counterfeit Products are virtually identical to one of Plaintiff's BIDI Products and features and/or incorporates one or more of the BIDI Marks.  There is no question that the Defendants' Counterfeit Products are designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's BIDI Products or that the Defendants' Counterfeit Products are otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the BIDI Marks.

40.     By these dealings in Counterfeit Products (including, without limitation, manufacturing,

importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the BIDI Marks, and have used marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the BIDI Marks in order to confuse consumers into believing that such Counterfeit Products are the BIDI Products and aid in the promotion and sales of their Counterfeit Products. Defendants' conduct began long after Plaintiff's adoption and use of the BIDI Marks, after Plaintiff obtained federal registrations in the BIDI Marks, as alleged above, and after Plaintiff's BIDI Products and BIDI Marks became well-known to the purchasing public.

41.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the BIDI Marks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the BIDI Products, and in bad faith adopted the BIDI Marks.

42.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the BIDI Marks and BIDI Products.

43.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

44.     By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the BIDI Marks, committed unfair

competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

45.    Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. §**
**1117(b)-(c)/Lanham Act § 35]**

46.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

47.    Plaintiff is the exclusive owner of all right and title to the BIDI Marks.

48.    Plaintiff has continuously used the BIDI Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit A**.

49.    Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its BIDI Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the BIDI Marks and/or used spurious designations that are identical with, or indistinguishable from, the BIDI Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, offering for sale and/or sale of Counterfeit Products.

50.    Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the BIDI Marks through their participation in such activities.

51.    Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the BIDI Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling

of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

52.    Defendants' unauthorized use of the BIDI Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the BIDI Marks.

53.    Defendants' actions constitute willful counterfeiting of the BIDI Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

54.    As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the BIDI Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable BIDI Marks.

55.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**

**[115 U.S.C. § 1114/Lanham Act § 32(a)]**

56.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

57.    Plaintiff has continuously used the BIDI Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit A**.

58.    Plaintiff, as owner of all right, title and interest in and to the BIDI Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

59.    Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the BIDI Marks.

60.    Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the BIDI Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, retail, offer for sale and/or sell the BIDI Products and/or related products bearing the BIDI Marks into the stream of commerce.

61.    Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the BIDI Marks and/or which are identical or confusingly similar to the BIDI Marks.

62.    Defendants knowingly and intentionally reproduced, copied and colorably imitated the BIDI Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or sale of Defendants' Counterfeit Products.

63.    Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the BIDI Marks.

64.    Defendants' egregious and intentional use of the BIDI Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's BIDI Products or are otherwise associated with, or authorized by, Plaintiff.

65.    Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the BIDI Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

66.    Defendants' continued, knowing, and intentional use of the BIDI Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered BIDI Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

67.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the BIDI Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable BIDI Marks.

68.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**

**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

69.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

70.     Plaintiff, as the owner of all right, title and interest in and to the BIDI Marks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

71.     The BIDI Marks are inherently distinctive and/or have acquired distinctiveness.

72.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the BIDI Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are BIDI Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the BIDI Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

73.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's BIDI Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the BIDI Marks, Defendants have traded off the extensive goodwill of Plaintiff and its

BIDI Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its BIDI Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

74.    Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the BIDI Marks would cause confusion, mistake or deception among purchasers, users and the public.

75.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its BIDI Products and BIDI Marks.

76.    As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its BIDI Products and by depriving Plaintiff of the value of its BIDI Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the BIDI Marks.

77.    Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### (Unfair Trade Practices)
### [South Carolina Unfair Trade Practice Act, S.C. Code Ann.  §§ 39-5-10 *et seq.*]

78.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

79.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its BIDI Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

80.    Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

81.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

82.    Defendant's advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products is a matter of public interest and concern and has been repeated by Defendants many times already and is capable of further repetition

19

and is likely to be repeated if not deterred by an award under the South Carolina Unfair Trade Practice Act in this matter.

83.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

84.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its BIDI Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its BIDI Marks as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

85.     As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and trebled damages for Defendants' intentional misconduct and willful and knowing violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.      In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered BIDI Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of actual damages, including special and consequential damages that are the proximate result of Defendants' deceptive conduct, to be trebled because of Defendants' willful and knowing violations, in an amount to be proven at trial for unfair trade practices under the South Carolina Unfair Trade Practice Act, S.C. Code Ann.  §§ 39-5-10 *et seq.*;

F.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

ii.   directly or indirectly infringing in any manner any of Plaintiff's BIDI Marks;

iii.   using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's BIDI Marks to identify any goods or services not authorized by Plaintiff;

iv.   using any of Plaintiff's BIDI Marks or any other marks that are confusingly similar to the BIDI Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (x) above; and

G.     For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's BIDI Marks, or bear any marks that are confusingly similar to the BIDI Marks;

H.     For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's BIDI Marks, or bear any marks that are confusingly similar to the BIDI Marks pursuant to 15 U.S.C. § 1118;

I.     For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

J.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

K.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

L.      For Plaintiff's reasonable attorneys' fees;

M.      For all costs of suit; and

N.      For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated: February 16, 2021                Respectfully submitted,

                                        */s/ Jason S. Smith*

                                        HELLMAN YATES & TISDALE, PA
                                        Jason S. Smith (11387)
                                        js@hellmanyates.com
                                        105 Broad Street, Third Floor
                                        Charleston, South Carolina 29401
                                        Telephone:  (843) 266-9099
                                        Facsimile:  (843) 266-9188


                                        EPSTEIN DRANGEL LLP
                                        Ashly E. Sands (AS 7715)
                                        asands@ipcounselors.com
                                        Jason M. Drangel (JD 7204)
                                        jdrangel@ipcounselors.com
                                        60 East 42nd Street, Suite 2520
                                        New York, NY 10165
                                        Telephone:   (212) 292-5390
                                        Facsimile:   (212) 292-5391

                                        *Attorneys for Plaintiff*
                                        *BIDI Vapor, LLC*